# In the United States Court of Federal Claims

No. 21-1447 C
(Filed: September 20, 2022 )

```
* * * * * * * * * * * * * * * * *  *
                                   *
JASON LAMBRO,                      *
                                   *
                  Plaintiff,       *
                                   *
       v.                          *
                                   *
THE UNITED STATES,                 *
                                   *
                  Defendant.       *
                                   *
* * * * * * * * * * * * * * * * *  *
```

*Joseph A. Whitcomb*, Whitcomb, Selinsky, PC, of Denver, CO, for Plaintiff.

*Matthew J. Carhart*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., for Defendant, and *Jessie James* and *Maryellen Righi*, Assistant General Counsels, U.S. Agency for Global Media, of Washington, D.C., of counsel.

## OPINION AND ORDER

**SOMERS**, Judge.

Before the Court is the government's motion to dismiss Plaintiff Jason Lambro's ("Plaintiff") transfer complaint for lack of subject matter jurisdiction and failure to state a claim. Plaintiff alleges that the U.S. Agency for Global Media ("USAGM" or "agency") willfully misclassified him and other similarly situated individuals as independent contractors rather than employees. Because of this misclassification, Plaintiff alleges that he did not receive benefits he was entitled to as a federal employee, namely overtime pay under the Fair Labor Standards Act ("FLSA" or the "Act"). In response, the government moved to dismiss all claims that accrued prior to January 28, 2018, as well as Plaintiff's claim for declaratory relief, for lack of subject matter jurisdiction. In addition, the government moved to dismiss the remainder of Plaintiff's complaint for failure to state a claim upon which relief may be granted because Plaintiff cannot establish that he is a federal employee entitled to the FLSA's protections. The government's motion to dismiss has been fully briefed, and the Court held oral argument on June 15, 2022. For the reasons explained below, the Court grants the government's motion to dismiss.

# BACKGROUND

A.  **Factual History**

As alleged in the operative complaint, since 2002, Plaintiff has worked as a studio technician for Voice of America ("VOA"), a division of USAGM. ECF No. 40 ¶¶ 17, 24 ("2d. Am. Compl."). He provided services under a series of purchase order agreements that are essentially unchanged from the parties' initial 2002 agreement. *Id.* ¶ 24–25. The agreements contained multiple terms that restricted the manner in which Plaintiff worked, including provisions that prohibited subcontracting and established deadlines for work product, along with explicitly stating that "no employer-employee relationship exists" between Plaintiff and the agency. *Id.* ¶ 25; *see generally* ECF No. 40-2. Despite the explicit statement that no employer-employee relationship exists, Plaintiff states that the agency "significantly controlled and continues to control the timing and management of Plaintiff's work." 2d. Am. Compl. ¶ 28. This included the agency telling Plaintiff when to arrive at work, *id.* ¶ 29; asking him to "complete . . . non-contracted for tasks," *id.* ¶ 33; supplying his equipment, *id.* ¶ 35; and asking Plaintiff "to remain on-call at times if the agency needed [him] at the office," *id.* ¶ 37. Plaintiff further alleges that he "worked more than 40 hours a week," but did not receive overtime pay or other benefits that his federal employee counterparts received. *Id.* ¶ 38. In 2018, Plaintiff formed a limited liability company to contract with VOA under "virtually identical" terms as the predecessor purchase order agreements between Plaintiff and the agency. *Id.* ¶ 42. Plaintiff alleges that, notwithstanding the agreement between his LLC and the agency, VOA failed to give Plaintiff the autonomy generally given to private entities, which resulted in him being unable to take time off work or have someone else complete the contracted-for work. *Id.* ¶ 46.

Plaintiff cites in support of his allegations a 2014 audit of USAGM. *Id.* ¶ 53–54. In 2014, the Broadcasting Board of Governors[1] Inspector General released a report that, among other things, found the agency had exceeded its congressional authority in awarding personal service contracts. *See* 2d. Am. Compl. ¶¶ 53–58. Plaintiff asserts that this audit is tantamount to an agency admission that an employer-employee relationship existed between contractors and the agency, which should have resulted in the agency "convert[ing] Plaintiff's and the Class Members' contracts into personal service contracts and award[ing] them FLSA benefits." *See id.* ¶¶ 54–58.

B.  **Procedural History**

Plaintiff originally filed his complaint in the United States District Court for the District of Columbia on January 28, 2021. *See* ECF No. 1. Shortly thereafter, Plaintiff filed an unopposed motion to transfer his case to this Court. *See* ECF Nos. 9–11. The district court granted the motion and Plaintiff filed a transfer complaint in this Court on June 17, 2021. *See* ECF Nos. 11, 20. Plaintiff filed a second amended complaint on November 5, 2021, asserting three grounds for relief. *See* 2d. Am. Compl. Count I of the complaint seeks damages and backpay for overtime worked while Plaintiff was allegedly misclassified as an independent contractor. *Id.* ¶¶ 69–82. Count II asserts that the agency willfully violated the FLSA, entitling Plaintiff to damages and back pay for up to three years prior to the filing of his complaint. *Id.*

---

[1] Now known as the United States Agency for Global Media.

¶¶ 83–88. Count III requests a declaratory judgment finding that Plaintiff is an agency employee. *Id.* ¶¶ 89–95. In response, the government moves to dismiss Plaintiff's complaint on three grounds: first, the FLSA's three-year statute of limitations for willful FLSA violations forecloses all claims that accrued prior to January 28, 2018, *see* ECF No. 41 at 12–13 ("Def.'s Mot. Dismiss"); second, Plaintiff failed to state a claim, as he is not a federal employee, *see id.* at 13–20; and third, because both Count I and II must be dismissed, the Court lacks jurisdiction to grant the declaratory relief requested in Count III, *see id.* at 20–21.

## DISCUSSION

### A. Legal Standard

#### 1. Motion to Dismiss for Lack of Jurisdiction

The United States Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. Under the Tucker Act, this Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States,* 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to state a claim within the Court's jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id*. Stated differently, the plaintiff must state a claim that is based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (citing *United States v. Testan*, 424 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003). In addition, even if a plaintiff brings a claim based on a money-mandating source of law, the claim must also be brought within the applicable statute of limitations in order for it to be within the Court's jurisdiction. *See Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature.").

#### 2. Motion to Dismiss for Failure to State a Claim

Even if a plaintiff alleges entitlement to relief under a money-mandating source of law, the plaintiff must still state a claim upon which the Court can grant relief. "When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citations omitted). Granting a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

B.   Analysis

    1.   **The Court Lacks Jurisdiction over Claims that Accrued Prior to January 28, 2018**

In his complaint, Plaintiff alleges, *inter alia*, that VOA willfully violated the FLSA by misclassifying him as an independent contractor rather than an employee. *See* 2d. Am. Compl. ¶¶ 83–88. The statute of limitations for most FLSA claims is two years, unless the employer willfully violates the Act, which adds another year to the limitations period. *See* 29 U.S.C. § 255(a). The government, in its motion to dismiss, argues that even if Plaintiff was able to establish a willful violation of the FLSA, the Court would still lack jurisdiction over all claims "that accrued before January 28, 2018," because they "are barred by the FLSA's statute of limitations" as they arose more than three years prior to when Plaintiff filed his original complaint in district court. *See* Def.'s Mot. Dismiss at 12. Plaintiff's response does not address the government's statute of limitations argument, *see generally* ECF No. 42 ("Pl.'s Resp."), and, unsurprisingly, counsel for Plaintiff conceded at oral argument that the government was correct with regard to these claims, *see* ECF No. 50 ("Tr. Oral Argument") at 4–5. Accordingly, as the Court lacks subject matter jurisdiction over all claims that accrued prior to January 28, 2018, such claims are dismissed. *See also Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver." (citing cases)).

    2.   **Because Plaintiff Is Not a Federal Employee, Counts I and II Fail to State a Claim**

Counts I and II of Plaintiff's complaint allege that VOA misclassified Plaintiff as an independent contractor thereby denying him "overtime pay, liquidated damages, and any other relief provided by the FLSA." 2d. Am. Compl. ¶¶ 82, 88. Although Plaintiff acknowledges that he was considered an independent contractor by VOA, he argues that, despite this classification, based on the economic realities test, he was, in reality, a VOA employee for purposes of the FLSA. *See id.* ¶¶ 20, 75, 76, 94. In response, the government asserts that because Plaintiff "was never appointed as a Federal employee, nor was he hired pursuant to specific Congressional authority creating an employer-employee relationship, he is not a Federal 'employee' under the FLSA." Def.'s Mot. Dismiss at 13. Accordingly, the government moves to dismiss Counts I and II of Plaintiff's complaint on the grounds that Plaintiff has failed to state a claim upon which relief may be granted because Plaintiff cannot establish that he is a federal employee entitled to the FLSA's protections. *See id.*; *see also Diaz v. United States*, 156 Fed. Cl. 270, 275 (2021) ("Whether [plaintiff] is an employee of the USPS is a legal question, not a factual allegation. Therefore, a plaintiff cannot assert by merely pleading, in a conclusory fashion, that he has employee status." (internal citations and quotations omitted)). The Court agrees with the government.

The FLSA provides various protections for full- and part-time employees, including overtime pay for employees who work for employers that fall within the Act's coverage. Importantly, the FLSA's protections only apply to "employees" employed by "employers" as those terms are defined in the Act. *See* 29 U.S.C. § 207. There is no dispute in this case that VOA (and the federal government generally) is an "employer" and thus subject to the FLSA. Instead, the parties dispute whether Plaintiff is an "employee." Rather unhelpfully, the FLSA defines the term "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In order to fill in the gaps left by this definition, Plaintiff urges the Court to turn to the economic realities test to determine whether he qualifies as an employee despite the fact that he has worked under a series of purchase order agreements. *See* 2d. Am. Compl. ¶¶ 20, 75, 76, 94.

The economic realities test is a judicially-created test used to determine whether a person who has not been classified as an employee does work of such a character and quality that he or she should in fact be classified as an employee. *See, e.g.*, *Williams v. Henagan*, 595 F.3d 610, 620 n.15 (5th Cir. 2010) ("The test stems from a series of Supreme Court cases rejecting the common-law understanding of 'employee' and 'independent contractor' in the context of the National Labor Relations Act, the Social Security Act, and the FLSA. In the FLSA context, the Court ruled in *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961), that 'economic reality rather than technical concepts is to be the test of employment.'"). There appears to be some variance in the factors considered by courts in applying the economic realities test; however, under the version proffered by Plaintiff, the Court is to consider: "1) right to control; 2) opportunity for profit or loss; 3) investment in equipment or materials required for employment; 4) the degree of skill required; 5) the degree of permanency and duration of the working relationship; and 6) the extent to which the service rendered is an integral part of the employer's business." Pl.'s Resp. at 16–17 (citing *Pendleton v. JEVS Hum. Servs., Inc.*, 463 F. Supp. 3d 548, 561 (E.D. Pa. 2020)).

According to Plaintiff, his work relationship with VOA easily meets the economic realities test. In support of this, Plaintiff alleges, *inter alia*, that he did not provide his own equipment, 2d. Am. Compl. ¶¶ 35, 77, was "on-call" and unable to set his own hours, *id.* ¶ 37, and worked more than forty hours a week without premium or overtime pay, *id.* ¶ 38. In addition, he asserts that "USAGM was aware, at minimum, in June 2014 that the purchase order agreements it entered into with Plaintiff . . . created an employee-employer relationship when [] the OIG audit explicitly told it as much. Yet, USAGM did nothing to convert Plaintiff's . . . independent contracting status to full-time employment." *Id.* ¶ 86.

The government counters that whether Plaintiff is able to satisfy the economic realities test is irrelevant to the inquiry because that test does not apply when assessing whether an individual is a federal employee. Rather, according to the government, "[b]ased on . . . well-established precedent, courts have correctly concluded that only those who are appointed or are hired pursuant to specific Congressional authority creating an employer-employee relationship are Federal employees under the FLSA." Def.'s Mot. Dismiss at 15. Thus, the government argues that because the complaint does not allege Plaintiff was appointed as a federal employee or that he was hired pursuant to specific congressional authorization creating an employment relationship, Plaintiff fails to state a claim. *See id.*

The Court concurs with the government. Recall that in order to be entitled to the FLSA's benefits, one must be an employee, *see* 29 U.S.C. § 203(e)(1), and that an "individual employed by a public agency" is separately defined under the Act so as to distinguish it from the more general term "employee," *compare* 29 U.S.C. § 203(e)(2)(A) *with* 29 U.S.C § 203(e)(1) ("*Except as provided in paragraph[] (2)* . . . the term 'employee' means any individual employed by an employer." (emphasis added)). The relevant inquiry for this case then is whether Plaintiff qualifies as a *federal* employee. In other words, may a plaintiff present a set of facts that would make him a *de facto federal* employee through application of the economic realities test? The answer to both questions is no.

As stated above, the economic realities test is a judicially-created doctrine that looks to "economic reality rather than technical concepts" as "the test of employment." *Goldberg*, 366 U.S. at 33. Application of that test to federal employment, however, is not workable as "technical concepts," such as appointment, are crucial to determining whether an individual is a federal employee. All federal employees derive the benefits and burdens of their positions from appointment. *See, e.g.*, *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985). This is crucial, as "the question of appointment, by itself, controls the question of whether an individual is an 'employee' for the purpose of civil service." *Watts v. Off. Personnel Mgmt.*, 814 F.2d 1576, 1579–80 (Fed. Cir. 1987). Moreover, "[t]he status of 'employee' requires unequivocal intention to bring an individual within the civil service." *Id.* This is because, unlike private employment, "federal workers' rights are defined by Title V and not by contract, the common law, or other statutes not specifically made applicable to federal workers." *Griffin v. Sec'y of Health and Hum. Servs.*, 124 Fed. Cl. 101, 106 (2014); *see also Doe v. United States*, 513 F.3d 1348, 1359 (Fed. Cir. 2008) ("[F]ederal employee benefits and pay are governed by statute, not by contract.").

Plaintiff nevertheless asserts that the common law economic realities test should apply to the federal government in lockstep with the private sector. That cannot occur without defying over forty years of established circuit precedent. The Court of Claims, the Federal Circuit, and this Court have continuously affirmed the principle that appointment is a *sine qua non* of federal employment. In *Baker v. United States*, the Court of Claims stated that in order for a worker to be considered a federal employee, he or she must meet "[a]ll three tests of this statutory definition, i.e., federal appointment, federal supervision, and federal function." 222 Ct. Cl. 263, 268 (1980). The *Baker* court went on to hold that, without appointment, the remainder of the inquiry is irrelevant. *Id.* The Federal Circuit has observed in later cases that there is a "significant degree of formality in the appointment process," *Horner v. Acosta*, 803 F.2d 687, 692 (Fed. Cir. 1986), and has delineated formalities that indicate someone has been appointed into the federal civil service. Examples of these formalities include execution of Standard Form 50 or 52, *see Watts*, 814 F.2d at 1580; *Horner*, 803 F.2d at 692–94; *Bevans v. Off. Personnel Mgmt.*, 900 F.2d 1558, 1562 (Fed. Cir. 1990), extensive paperwork, *see Guevara v. I.N.S.*, No. 90–1476, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992), withholdings from the employee's salary for the civil servant retirement fund, *see Bevans*, 900 F.2d at 1563, and administration of an oath, *Horner*, 803 F.2d at 694; *Watts*, 814 F.2d at 1579. Perhaps most telling, however, is that even in the presence of those indicia the Court of Claims and the Federal Circuit have explicitly rejected a "totality of the circumstances" approach, as "[a]n abundance of federal function and supervision will not make up for the lack of appointment." *Horner*, 803 F.2d at 693 (internal

6

quotations omitted) (quoting *Costner v. United States*, 229 Ct. Cl. 87, 94 (1981)); *see also Bevans*, 900 F.2d at 1564 (rejecting the argument that administration of the oath of office set out in 5 U.S.C. § 3331 was an indicator of appointment to federal service because "even if [the court] assume[s] [plaintiff] was given the oath of office, the administration of an oath would not itself establish that [plaintiff] was appointed in the civil service"). This is because "definite, unconditional action by an authorized federal official designating an individual to a *specific civil service position* is necessary to fulfill the appointment requirement of 5 U.S.C. § 2105(a)," and federal function and supervision are not sufficient decisive action. *Horner*, 803 F.3d at 693 (emphasis added). This means that it is not enough for an independent contractor to occupy a post at an agency. There must be a corresponding action that intentionally brings him or her into federal service: appointment. *Baker*, 222 Ct. Cl. at 266.

Even if Plaintiff could successfully argue that he has met the latter two *Baker* prerequisites for federal employment (federal supervision and function), he has not alleged that he was appointed, or even constructively appointed, which is required for him to state a claim. As the applicable caselaw makes clear, there is no federal employment without appointment. *See, e.g.*, *Costner*, 229 Ct. Cl. at 94. The complaint alleges many facts that, if Plaintiff was alleging employment by a private employer, would be pertinent to the economic realities test. *See* 2d. Am. Compl. ¶ 29 ("Plaintiff was told when to arrive at work . . . . what audio systems he would operate . . . ."); *id.* ¶ 33 ("Plaintiff was consistently directed to complete [] non-contracted for tasks . . . ."); *id.* ¶ 35 (stating that "plaintiff was never required to provide any equipment to complete his tasks"). However, the economic realities test can only prove *constructive* employment. In other words, the nature of the economic realities test is that a court looks at the quality and character of conduct an employee engages in and determines as a matter of law whether or not there is such a degree of control that the person cannot be fairly characterized as an independent contractor. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . ."). That is not the case with federal employment, which cannot occur "in a passive manner without appointment." *Watts*, 814 F.2d at 1580.

This difference is exemplified by the Federal Circuit's decision in *Guevara v. Immigration and Naturalization Service*, No. 90–1476, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992). In that case, inmates who worked voluntarily and were paid one dollar a day asserted that they "must be paid in accordance with the minimum wage requirements" of the FLSA. *Guevara v. I.N.S.*, 1992 WL 1029, at *1. The circuit rejected this proposition and, in upholding the district court's decision that the FLSA did not apply to the plaintiffs, noted that the plaintiffs had failed to plead "any basis for their entitlement to the status of federal employees." *Id.* In part, this is because "[w]hatever the category, an individual is not considered to be a federal government employee until he or she has been properly appointed as an employee of the Government," which involves appointment by a person who is authorized to do so. *Id.* at *2.

In the instant case, Plaintiff has failed to allege that he was appointed by someone with the authority to do so at the agency. *See generally* 2d. Am. Compl. Rather, as stated above, the allegations relate almost entirely to the contracted for agreement between Plaintiff and VOA and

7

their conduct while under said agreements. *Id.* Thus, Plaintiff's complaint does not allege any facts that, assumed as true, indicate formal action that would demonstrate his constructive appointment. That makes sense considering Plaintiff attempts to apply a common law rule that is diametrically opposed to the stringent and formal requirements of federal employment. *See Horner*, 803 F.2d at 692 ("The precedents binding on this court have required that there be a significant degree of formality in the appointment process."). The economic realities test fills the gap that Congress left in defining private sector employers and employees, whereas the Act delineates and more specifically defines what constitutes a federal employee.[2] This is likely because, in drafting the Act, Congress was aware of the formalities that coincide with federal employment. *Compare* 29 U.S.C. § 203(e)(2)(A) *with* 29 U.S.C § 203(e)(1); *see also Griffin*, 124 Fed. Cl. at 106 ("[W]hen a statute limits its applicability, at least in part, to only United States employees, we presume that Congress had in mind the definition of a federal employee from the statutes that govern them.").

The Court finds Judge Tapp's reasoning in *Diaz v. United States*, 156 Fed. Cl. 270 (2021), both helpful and on point. In *Diaz*, Judge Tapp addressed the case of an independent contractor who served as a mail carrier for the United States Postal Service. *See* 156 Fed. Cl. at 273. The plaintiff in that case brought a complaint alleging, *inter alia*, that he was improperly classified as an independent contractor because "he performed essentially the same tasks as employee mail carriers." *Id.* at 275. Judge Tapp held that the plaintiff was properly classified as an independent contractor and not a federal employee. *Id.* at 274. In doing so, he noted that whether or not someone is a federal employee is "a legal question, not a factual allegation," and thus "a plaintiff cannot assert by merely pleading, in a conclusory fashion, that he has employee

---

[2] Federal employees did not become entitled to the FLSA's protections until the 1974 amendments to the FLSA. *See* 88 Stat. 58. Those amendments extended the FLSA's protections to individuals employed by a public agency, which includes

(A) any individual employed by the Government of the United States—

    (i)    as a civilian in the military departments (as defined in section 102 of Title 5),

    (ii)    in any executive agency (as defined in section 105 of such title),

    (iii)    in any unit of the judicial branch of the Government which has positions in the competitive service,

    (iv)    in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces,

    (v)    in the Library of Congress, or

    (vi)    the Government Publishing Office;

29 U.S.C. § 203(e)(2)(A). The cross-referenced definition to an "executive agency" defines the term as "an Executive department, a Government corporation, and an independent establishment." 5 U.S.C. § 105. The parties do not dispute that VOA is a public agency as defined in 29 U.S.C § 203(e)(2)(A).

status." *Id.* at 275 (internal quotations and citations omitted). Moreover, Judge Tapp rejected application of the economic realities test, despite the plaintiff's urging, because

> the use of the economic realities test, or any balancing test for that matter, would be a misapplication of the law as it relates to federal employees. . . . The Federal Circuit imposes a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government."

*Id.* at 276 (quoting *Harrison v. United States*, 120 Fed. Cl. 533, 544–45 (2015). Additionally, he noted that the plaintiff had failed to allege appointment and the fact that the plaintiff "executed multiple agreements over the course of several years containing the apparent mutual understanding that he was an independent contractor" further demonstrated that the plaintiff was in fact an independent contractor rather than a federal employee. *Diaz*, 156 Fed. Cl. at 276.

Many of the facts that proved dispositive in *Diaz* are present in this case as well. Plaintiff has not alleged facts that suggest appointment, and, instead, he has relied on the economic realities test to attempt to bridge that gap. As explained above and articulated in *Diaz*, for federal employees the economic realities test is not a substitute for appointment. Furthermore, the fact that Plaintiff entered into an essentially identical contract seventeen times over the last seventeen years, 2d. Am. Compl. ¶ 27, that explicitly states that "no employer employee relationship exists" between Plaintiff and the government, *id.* ¶ 25, strongly indicates that there was a "mutual understanding" that Plaintiff is an independent contractor. *Diaz*, 156 Fed. Cl. at 276 (finding that the presence of multiple agreements that spanned several years indicated an understanding that the plaintiff was an independent contractor).

The Federal Circuit has explicitly stated that "absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu*, 773 F.2d at 1229. Although a significant portion of Plaintiff's opposition to the government's motion addresses what the agency *could* have done in terms of appointing him, there is no allegation that Plaintiff was hired pursuant to any specific authority that would entitle him to a remedy under the FLSA. *See generally* 2d. Am. Compl. In short, the only way the Court could find in favor of Plaintiff would be to ignore binding circuit precedent. Moreover, the ramifications of such a finding would be enormous, as the Federal Circuit summarized in *Watts v. Office of Personnel Management*. In that case, the circuit considered whether a pilot employed by a proprietary Central Intelligence Agency corporation was entitled to civil service retirement benefits. *See Watts*, 814 F.2d at 1578. There, the plaintiff argued that "the circumstances as a whole indicate the intention to appoint [plaintiff] to the civil service." *Id.* at 1580. In holding that the plaintiff was not a civil servant, the circuit observed that

> [t]he position urged by Watts would create a new category of employees who, without formal appointment or even awareness of the government's role when employed, would become "appointed" civil servants, in numbers unknown, and without thought as to their effect on actuarial soundness of the retirement fund. The

> implications of Watts' position might extend further to cover employees of corporations, privately owned, yet primarily producing goods or services for the government. We conclude that, in the absence of formal or even intended appointment, Watts is not an "employee" for the purposes of the civil service system.

*Id.* at 1579.  Plaintiff's proffered position creates the same issue: a litany of employees in numbers unknowable that would be entitled to the benefits and burdens of federal employment without definitive action by the government.

As demonstrated throughout the above, Plaintiff's arguments are entirely foreclosed by the requirements regarding the creation of federal employment and binding Court of Claims and Federal Circuit precedent applying those requirements.  Because Plaintiff's complaint does not allege a scintilla of evidence that would indicate to this Court that he was appointed, he has not as a matter of law sufficiently alleged that he is a federal employee.  Therefore, he fails to state a claim under Counts I and II upon which the Court can grant relief.

### 3. The Court Lacks Jurisdiction over Count III Because It Requests Declaratory Relief That Is Not Incident and Collateral to a Claim within the Court's Jurisdiction

Finally, Count III of Plaintiff's complaint requests relief in the form of a declaration "that at all times while working for Defendant, [Plaintiff and other potential class members] were improperly misclassified and should have been classified as employees instead of independent contractors, pursuant to the FLSA." 2d. Am. Compl. ¶ 91.  As Judge Lettow explained in *Land of Lincoln Mutual Health Insurance Company*, 129 Fed. Cl. 81 (2016), this Court has jurisdiction to grant declaratory or other equitable relief in three circumstances:

> First, the court may "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" as an "incident of and collateral to" a monetary judgment. 28 U.S.C. § 1491(a)(2). Second, the court has jurisdiction to hear nonmonetary disputes arising under the Contract Disputes Act, 28 U.S.C. § 1491(a)(1) (last sentence), and third, it has juridical power to grant equitable relief in bid protests. 28 U.S.C. § 1491(b)(2).

129 Fed. Cl. at 99; *see also Manuel v. United States*, 115 Fed. Cl. 105, 114–15 (2014) (collecting cases).  As this case is neither a Contract Disputes Act claim nor a bid protest, in order for the Court to be empowered to grant declaratory relief, there must be a claim that on the merits entitles Plaintiff to a monetary judgment.  *See Faison v. United States*, 102 Fed. Cl. 637, 643 (2012).  As explained above, Plaintiff fails to state a monetary claim upon which relief may be granted; therefore, the Court does not have jurisdiction over Plaintiff's request for declaratory relief and grants the government's motion to dismiss Count III.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the government's motion to dismiss. The Clerk **SHALL** enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers  
ZACHARY N. SOMERS  
Judge
