# In the United States Court of Federal Claims

No. 21-1447 C

(Filed: April 1, 2025)

```
* * * * * * * * * * * * * * * * *
                                 *
JASON LAMBRO,                    *
                                 *
                Plaintiff,       *
                                 *
        v.                       *
                                 *
THE UNITED STATES,               *
                                 *
                Defendant.       *
                                 *
* * * * * * * * * * * * * * * * *
```

*Joseph A. Whitcomb*, Whitcomb, Selinsky, McAuliffe P.C., of Denver, CO, for Plaintiff.

*Matthew J. Carhart*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.

## OPINION AND ORDER

**SOMERS**, Judge.

Before the Court is the government's motion for judgment on the pleadings or, in the alternative, for summary judgment, submitted pursuant to the Court's September 13, 2024, order for supplemental briefing. ECF No. 71. In its order, the Court directed the parties to brief "whether [Plaintiff]'s case is barred by the applicable statute of limitations." *Id*. Plaintiff's case stems from his allegation that the U.S. Agency for Global Media ("USAGM") willfully misclassified him and other similarly situated individuals as independent contractors rather than as employees. Consequently, Plaintiff alleges that he and similarly situated individuals did not receive benefits to which they were entitled as "employees" under the Fair Labor Standards Act ("FLSA"). The government, in its supplemental brief, argues that, because Plaintiff failed to timely file a written consent to become a party plaintiff to a collective action under the FLSA, his suit was not commenced within the FLSA's statute of limitations. *See* 29 U.S.C. § 256. For the reasons explained below, the Court grants in part and denies in part the government's motion for judgment on the pleadings.

# BACKGROUND

### A. Factual Background

The factual background to this case is largely contained within the Court's 2022 memorandum opinion and order in this case. *See Lambro v. United States*, 162 Fed. Cl. 344 (2022), *vacated*, 90 F.4th 1375 (Fed. Cir. 2024). To summarize, Plaintiff Jason Lambro, on behalf of himself and others similarly situated, filed a complaint on January 28, 2021, against the United States under the FLSA. *See generally* ECF No. 40. Mr. Lambro is the only named plaintiff in the operative complaint. *Id.* ¶¶ 14–22. Plaintiff's claim stems from his work as a studio technician for Voice of America ("VOA"), an affiliate of USAGM, "from 2002 to approximately July 2020 . . . ." *Id.* ¶ 25; *see also id.* ¶ 24. According to Plaintiff, Plaintiff and members of the putative collective performed work for USAGM through a series of purchase order agreements that formally described Plaintiff and the putative collective members as independent contractors, but those agreements, allegedly, created an employee-employer relationship between the parties. *Id.* ¶ 1.

Consequently, Plaintiff and putative collective members assert that were denied benefits available to federal employees under the FLSA due to USAGM's misclassification of their employment status. *Id.* ¶¶ 85–87. In addition, they allege that USAGM's conduct was willful because it was put on notice by a 2014 audit by the U.S. Department of State's Office of the Inspector General ("OIG") that USAGM's contracting practices were in violation of the FLSA. *Id.* ¶¶ 3, 53–58. Nevertheless, according to Plaintiff, USAGM "continued to hire Plaintiff and the Class Members as purchase order vendors or non-personal service contractors when advised that such a decision was improper" and "failed to properly convert Plaintiff's and the Class Members' contracts into personal service contracts and award them FLSA benefits." *Id.* ¶¶ 57, 58. Thus, Plaintiff and putative collective members request, *inter alia*, "an award of damages including any difference in compensation Plaintiff and the Class Members would have earned, but for the Defendant's illegal misclassification." *Id.* at 19.

### B. Procedural History

Plaintiff originally filed this case in the District Court for the District of Columbia on January 28, 2021. *See* ECF No. 1. On June 11, 2021, the case was transferred to the Court of Federal Claims. ECF No. 13. Given the case's extensive history in this Court, the Court recounts here only the developments in this case since the Court's 2022 decision, 162 Fed. Cl. 344 (2022), granting the government's motion to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted. In that decision, the Court determined, relying on binding precedent from both the Court of Claims and the Court of Appeals for the Federal Circuit as well as persuasive authority from other judges of this Court, that because Plaintiff had neither been appointed as a federal employee nor employed pursuant to specific legislation, he was not covered by the FLSA and could not rely on the economic realities test to create a de facto employee-employer relationship. *Id.* at 350–54 (citing and discussing cases in support of this proposition, including *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985) ("absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the

government")). The Court further dismissed Plaintiff's claims that accrued prior to January 28, 2018, finding that they were barred by the FLSA's statute of limitations. *Id*. at 350.

One day after the Court issued its opinion, on September 21, 2022, Plaintiff filed a notice of appeal. ECF No. 53. On January 22, 2024, the Federal Circuit "vacate[d] the [Court]'s dismissal of Mr. Lambro's timely claims" and remanded the case to this Court "for further proceedings consistent with [the Federal Circuit's] opinion." *Lambro v. United States*, 90 F.4th 1375, 1384 (Fed. Cir. 2024). On June 13, 2024, the mandate issued, conferring jurisdiction over the case back to this Court. ECF No. 56.

Subsequently, the Court ordered the parties to "submit a joint status report proposing a schedule for further proceedings in this case." ECF No. 57 at 1. However, Plaintiff then filed a motion for leave to file a third amended complaint, to relate back, for equitable tolling, and for initial and national certification. *See* ECF No. 58. Importantly for purposes of the pending motion for judgment on the pleadings, it was at this time that Plaintiff filed his written consent to become a party plaintiff pursuant to 29 U.S.C. § 256. ECF No. 58-4 at 2. The Court stayed briefing on Plaintiff's motions and ordered the government to first answer the operative complaint before responding to Plaintiff's motions. ECF No. 66.

In its answer to Plaintiff's second amended complaint, the government asserted that Plaintiff's claims are barred by the statute of limitations because "neither Mr. Lambro nor any putative opt-in plaintiffs filed a written consent to proceed in this action until June 18, 2024." ECF No. 67 at 15. Seeking to address this threshold issue raised by the government's answer, the Court, after conducting a lengthy status conference with the parties, ordered the parties to file supplemental briefs addressing the following questions:

(1) whether Mr. Lambro's collective action claims are barred by the FLSA's statute of limitations;

(2) whether equitable tolling is warranted as to Mr. Lambro's collective action claims;

(3) what disposition is appropriate in light of the answers to questions (1) and (2); and

(4) whether the Court's authority to address the statute of limitations argument is constrained by the Federal Circuit's June 13, 2024, mandate.

ECF No. 74 at 3–4 (cleaned up); *see also* ECF No. 71. In its supplemental brief, the government moved for judgement on the pleadings or, alternatively, for summary judgment, on the grounds that Plaintiff failed to commence a collective action within the FLSA's statute of limitations. ECF No. 74 at 1, 4. The Court held oral argument on the issues raised by the parties' supplemental briefs, ECF No. 77, and the government's motion is ripe for adjudication.

## DISCUSSION

A.   **Legal Standard**

Rule 12(c) of the Rules of the U.S. Court of Federal Claims ("RCFC") provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." RCFC 12(c). "[W]hen considering a motion under RCFC 12(c), the court applies substantially the same test as it does for a motion to dismiss for failure to state a claim under RCFC 12(b)(6)." *Sikorsky Aircraft Corp. v. United States*, 122 Fed. Cl. 711, 719 (2015). Thus, the Court "must assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant . . . ." *Owen v. United States*, 851 F.2d 1404, 1407 (Fed. Cir. 1988). In so doing, "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 344 (2013) (quoting *Forest Lab'ys, Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007)). In considering a motion for judgment on the pleadings, "the court may review 'the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the . . . court will take judicial notice.'" *Charleston Area Med. Ctr., Inc. v. United States*, 138 Fed. Cl. 626, 629 (2018) (alteration in original) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2004)).

Summary judgment is similarly appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *see also* RCFC 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." *Id.* at 250.

The government's motion requires that Court to consider a pure question of statutory interpretation. Because there are no material facts in dispute, and because the case presents only legal questions, it is appropriate for disposition either through judgment on the pleadings or summary judgment.

B.   **Analysis**

Resolution of the government's motion comes down to three questions. First, and most importantly, has Plaintiff timely filed a written consent to become a party plaintiff to an FLSA collective action? Second, if Plaintiff failed to timely file his written consent, should the FLSA's statute of limitations be equitably tolled to preserve Plaintiff's otherwise time-barred claims? Third, if Plaintiff failed to timely file a written consent and does not satisfy the requirements for equitable tolling of his claims, has he sufficiently pled an individual FLSA claim that can survive the dismissal of the claims of the putative collective? The Court will answer these questions in turn.

### 1. Plaintiff Failed to Timely File a Written Consent to Become a Plaintiff in an FLSA Collective Action.

In its motion, the government asserts that Plaintiff's collective action was not commenced until June 18, 2024, the date on which he filed with the Court his written consent to be a party plaintiff to a collective action. ECF No. 74 at 5. According to the government, because the collective action was not commenced until June 18, 2024, the collective action (including Plaintiff's individual claims) must be dismissed because Plaintiff's claims fall outside of even the FLSA's longer three-year statute of limitations for willful violations. *Id*. ("The conduct at issue in the operative complaint all predates June 18, 2021."). In response, Plaintiff contends that a named plaintiff to an FLSA collective does not need to file a separate written consent to commence a collective action. ECF No. 75 at 5. According to Plaintiff, for a claimant named in the complaint, the complaint itself operates as the claimant's written consent; therefore, Plaintiff's January 28, 2021, complaint, which lists him as the sole named plaintiff, commenced a collective action within the FLSA's statute of limitations. *Id*. ("Mr. Lambro has signaled his intent in his complaint to be part of a collective action, which is signed by his attorney and filed in this court."). After all, Plaintiff asserts, "[i]t is impossible for a named plaintiff to be surprised with an unwanted collective action, and she herself selected her lawyer." ECF No. 75 at 6 (alteration in original) (quoting *Smith v. Pro. Transp., Inc.*, 5 F.4th 700, 703 (7th Cir. 2021)). Moreover, Plaintiff reasons that, because the words "separate" and "signed" are not included in 29 U.S.C. § 256, he did not need to file a signed consent separate from his complaint, as his complaint implicitly served this purpose. *Id*. at 7. In addition, Plaintiff argues that the government waived its written consent statute of limitations defense by failing to raise this issue in its motion to dismiss or on appeal.[1] *Id*. at 9.

To begin with the simpler of Plaintiff's responses, the government did not waive its statute of limitations defense by failing to raise it in its motion to dismiss or on appeal. First, a defense based on the statute of limitations is an affirmative defense that may be asserted for the first time in an answer. *See* RCFC 8(c)(1) (listing statute of limitations among the affirmative defenses that must be asserted in response to a pleading); *see also* RCFC 12(h)(1). As RCFC 12(h)(1) explains, only a defense listed in RCFC 12(b)(2)-(5) is waived by "failing to . . . make it by motion under [RCFC 12]." As the statute of limitations is not a defense listed in RCFC 12(b)(2)-(5), it is not subject to waiver by the government's "failure" to raise it in its initial motion to dismiss. *See* RCFC 12(b). Moreover, "multiple courts have held that asserting a statute-of-limitations defense in an FLSA case is sufficient to preserve a defendant's right to later develop an argument that plaintiffs' claims are time-barred due to failure to file written consents, and that defendants are not estopped from advancing that argument simply because they

---

[1] Plaintiff does not meaningfully make this argument in his response to the government's motion other than to state that "Defendant does not dispute that it failed to t [sic] raise the 'signed consent' issue in its 12(b)(1) or (6) motion in November 2021 or on appeal" and then proceeds into arguments related to equitable tolling, which have nothing to do with waiver of a defense. ECF No. 75 at 9. However, Plaintiff pressed this argument more fully in an earlier brief before the Court, *see* ECF No. 63 at 1–3, so the Court addresses it here, even though not fully developed by Plaintiff and, therefore, essentially waived by Plaintiff. *See Australian Therapeutic Supplies Pty. Ltd. v. Naked TM LLC*, 965 F.3d 1370, 1379 n.2 (Fed. Cir. 2020) (Wallach, J., dissenting) (noting that arguments made "in passing" are not considered fully developed and are waived).

conducted discovery and did not place plaintiffs on notice that their consents were defective or missing." *Pineda v. Skinner Servs., Inc.*, No. 16-CV-12217, 2020 WL 5775160, at *9 (D. Mass. Sept. 28, 2020) (citing *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 677 (6th Cir. 2012); *Matuska v. NMTC, Inc.*, No. 10-CV-3529, 2012 WL 1533779, at *3 n.6 (D.N.J. Apr. 30, 2012); *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. 10-CV-2336, 2013 WL 5587291, at *4 (D. Md. Oct. 9, 2013)). Consequently, the government preserved its statute of limitations argument in its answer by raising it when it became evident, and the Court may consider this defense.

Moving on to the substance of the government's FLSA written consent argument and Plaintiff's disagreement therewith, the statute of limitations for most FLSA claims is two years, unless the employer willfully violates the FLSA, which extends the period to three years. 29 U.S.C. § 255(a). Plaintiff plausibly alleged that USAGM willfully violated the FLSA. *See, e.g.*, ECF No. 40 ¶ 3 ("[T]he OIG determined that the USAGM misclassified Class Members in knowing violation of the law. Even after the OIG's findings, USAGM refused to rectify its wrongs and continued to use purchase orders . . . ."). Accordingly, the Court will apply the longer, three-year statute of limitations for willful violations in deciding whether Plaintiff's collective action was commenced within the statute of limitations.

To evaluate whether the collective action claims Plaintiff asserts are time-barred, the Court must determine the date, under the FLSA, on which those claims were commenced. This inquiry turns on sections 216 and 256 of title 29, which, *inter alia*, govern the commencement of an FLSA collective action. *See* 29 U.S.C. §§ 216, 256. Section 216(b) permits "one or more employees" to bring a collective action on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, section 216(b) also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Read in context, the phrase "any such action" refers to an action by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated," i.e., a collective action. *Id.* As the government observes, section 216(b) uses "the unqualified phrase 'no employee' to describe the obligation to file a written consent, rather than a narrower phrase that would limit the obligation to opt-in plaintiffs." ECF No. 74 at 7 (quoting 29 U.S.C. § 216(b)). In other words, "no employee," even one named in a complaint, may be a party plaintiff to a collective action under the FLSA unless "he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Moreover, if the complaint itself could serve as the written consent, as Plaintiff urges, the clause "and such consent is filed in the court in which such action is brought" would be superfluous as to employees who are named plaintiffs because a complaint is obviously filed in the court in which the action is brought. Therefore, even an employee named in the complaint, like Plaintiff, must give "his consent in writing" to be a plaintiff in an FLSA collective action. *See* 29 U.S.C. § 216(b); *see also Green v. Platinum Restaurants Mid-Am., LLC*, No. 14-CV-439, 2020 WL 1452724, at *2 (W.D. Ky. Mar. 25, 2020) ("In construing the language of § 216, the Sixth Circuit has stated, '[t]o bring a collective FLSA action, a plaintiff must file a written consent to opt-in to the collective action . . . .'") (first alteration in original) (quoting *Frye*, 495 F. App'x at 675).

Although it may be unusual to require a named plaintiff to also file a separate written consent to become party to a lawsuit, that is precisely what section 216(b) requires. The Third Circuit has observed that, "[i]t is an oddity that a plaintiff who files a complaint in her own name, unless she files a separate written consent, is not treated as consenting to join the very lawsuit she initiated. Nevertheless, that is one of the shoals on the FLSA waterway, and parties must navigate accordingly." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 152 (3d Cir. 2019) (citation omitted); *see also Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 (D. Nev. 1999) ("It is indeed redundant and unusual to make named plaintiffs file their consents with the Court. Notwithstanding the fact that the statutory requirements are repetitive or wasteful, they are the unambiguous requirements which Congress has duly enacted."). When interpreting statutes, the Court presumes that Congress knows how the law usually operates and selects the language that it intends to apply regardless of whether it places an extra requirement on FLSA claimants, beyond what is usually required to commence a lawsuit. *Albernaz v. United States*, 450 U.S. 333, 341 (1981) ("But, as we have previously noted, Congress is 'predominantly a lawyer's body,' and it is appropriate for us to 'assume that our elected representatives . . . know the law." (first quoting *Callanan v. United States*, 364 U.S. 587, 594 (1961); and then quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–97 (1979)).

Section 256 confirms this result and provides teeth to the written consent requirement by tying the commencement of a collective action for statute of limitations purposes to the filing of a written consent in the court in which the action is brought. In general, under section 256, "[i]n determining when an action is commenced for the purposes of [the statute of limitations], an action . . . shall be considered to be commenced on the date when the complaint is filed . . . ." However, section 256 contains a specific exception to this general rule for collective actions:

> in the case of a collective or class action instituted under the [FLSA], it shall be considered to be commenced in the case of any individual claimant—
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint *and* his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; *or*
>
> (b) *if such written consent was not so filed* or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*Id.* (emphasis added). Thus, section 256 establishes two rules for when a collective action is commenced—one for a claimant who files his or her written consent at the time the complaint is filed and one for a claimant who files his or her written consent at some time after the complaint is filed. Section 256 does not, as Plaintiff suggests, establish a rule for an individual claimant named as a party plaintiff in the complaint and one for an individual claimant not named in the complaint who later chooses to become a plaintiff to a collective action.

Under the first rule, a collective action is commenced on the date the complaint is filed *if* an individual claimant is both "specifically named as a party plaintiff in the complaint *and* his written consent to become a party plaintiff is filed on such date in the court in which the action is

7

brought." *Id.* (emphasis added).  In short, if these two criteria are met, the action is deemed to have been commenced on the date on which the complaint is filed.  Conversely, the second rule applies in instances in which an individual claimant did not file a written consent along with the complaint, even if that claimant was named as a plaintiff in the complaint.  Under the second rule, the action is deemed to have been commenced "on the subsequent date on which such written consent is filed . . . ."  *Id.*; *see also Burrell v. La Follette Coach Lines*, 97 F. Supp. 279, 282–83 (E.D. Tenn. 1951) ("If 'such written consent was not so filed' by a named plaintiff at the time of the filing of the complaint, the action is commenced as to him on the subsequent date on which his written consent is filed . . . ." (quoting 29 U.S.C. § 256)).  The second rule also applies to claimants who were not named in the complaint.

Although Plaintiff may read these clauses differently, Plaintiff's reading of section 256 does not comport with a plain reading of the text of the statute.  Section 256(a) explicitly contemplates cases in which the plaintiff is "specifically named as a party plaintiff in the complaint."  And in such cases, section 256 still requires written consent by a party plaintiff for the action to have been commenced on the date it is filed.  That is to say, under section 256, two documents are required to commence a collective action: "the complaint *and* his written consent to become a party plaintiff . . . ."  *Id*. (emphasis added).  Presumably, every complaint implicitly manifests a litigant's consent to become a plaintiff, or else that litigant would not have filed a complaint in the first place.  That Congress chose to specify both "the complaint" and "his written consent" indicates that they are two separate requirements.  *See Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning."); *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

To ignore the written consent requirement for named plaintiffs requires the Court not only to ignore the plain meaning of the text of the statute but also to ignore at least two canons of statutory construction.  First, as a rule of construction, courts "assume that Congress is aware of existing law when it passes legislation."  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990).  Thus, the Court must assume that Congress was well aware at the time the written consent requirement was added to the FLSA in the Portal-to-Portal Act of 1947 that the Federal Rules of Civil Procedure provided, as they do today, that "[a] civil action is commenced by filing a complaint with the court."  Fed. R. Civ. P. 3.  Accordingly, the Court must further assume that Congress's choice to add the additional requirement of written consent to commence a collective action was intentional and not a mistake or a redundancy by a Congress unfamiliar with how a civil action was commenced.  Congress is presumed to have been well aware that only the filing of a complaint was generally required to commence a federal lawsuit.

Second, ignoring the written consent requirement also requires the Court to largely read the written consent language and related clauses and phrases out of the statute—a violation of another principle of statutory construction.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).  To begin, there would be no reason whatsoever to even mention "written consent" in subsection (a) if the filing of a

8

complaint itself constituted a named plaintiff's written consent. The complaint and written consent would be synonymous, making the written consent language superfluous. Moreover, if Plaintiff's interpretation were correct, the first clause of subsection (b)—"if such written consent was not so filed"—would essentially be deleted from the statute's text because there would be no set of individual claimants to which this clause could apply. Because the language in subsection (b)—"or if his name did not so appear"—clearly refers to the situation in which an individual claimant not named as a party plaintiff later joins the collective, it is equally clear that the "if such written consent was not so filed" language refers to a named plaintiff. It therefore follows that if Plaintiff were correct, there would be no claimants for which "such written consent was not so filed," and the clause would be superfluous.

Additionally, Plaintiff's reading would make the "on such date" language in subsection (a) and the "on the subsequent date" language in subsection (b) nonsensical. Subsection (a) states that commencement of the action occurs on the date the complaint is filed if the written consent "is filed on such date." Plaintiff does not even disagree with this proposition—he just asserts that the complaint can be the written consent. But how could the written consent not be filed "on such date" if the complaint itself can serve as the written consent? It is an impossibility under Plaintiff's reading of the statute, making the "filed on such date" language either nonsensical or superfluous. The same can be said of the "on the subsequent date" language in subsection (b). If the complaint itself can serve as the written consent for a named plaintiff, how can there be a "subsequent date on which such written consent" can be filed for a named plaintiff? A complaint, whether an original complaint or an amended complaint, is only filed once, on one date—there is no "subsequent date" on which the complaint could be filed. Accordingly, the complaint cannot possibly serve as the written consent without also making the "on the subsequent date" language either superfluous or nonsensical.

In short, Plaintiff's interpretation asks the Court to ignore Congress's express limitation requiring individual claimants to affirmatively opt into a collective action and renders the written consent requirement in section 256 "superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31. If a named plaintiff could consent to be a party plaintiff to a collective action solely through the filing of a complaint, the statute would not need to distinguish between the situation in which a named plaintiff filed his or her consent at the time the complaint was filed and the situation in which a named plaintiff filed his or her written consent on a subsequent date—there would not be a situation in which a named plaintiff could have filed a complaint for a collective action claim and *not* also have consented. Put simply, the statutory text is clear: a named plaintiff must file both a complaint and a written consent to commence a collective action under the FLSA. The Court must decline Plaintiff's invitation to rewrite this provision of the FLSA to his favored interpretation. *See Conn. Nat. Bank*, 503 U.S. at 253–54 ("We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citations omitted) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981))).

Furthermore, the federal courts of appeals that have squarely addressed this issue have agreed that a named plaintiff must file a written consent to commence an FLSA collective action. *See, e.g., Stone v. Troy Constr., LLC*, 935 F.3d 141, 153–55 (3d Cir. 2019) (holding that some of

9

the named plaintiff's claims were time-barred because she had failed to supply a timely written consent separate from her complaint); *Acosta v. Tyson Foods, Inc.*, 800 F.3d 468, 472 (8th Cir. 2015) ("We conclude that [the named plaintiff] was required to file a timely consent, because his complaint alleged a collective action."); *Gomez v. Tyson Foods, Inc.*, 799 F.3d 1192, 1194 (8th Cir. 2015) ("[T]he district court should have dismissed the FLSA claims because no named plaintiff filed the required consent to proceed as a party in the collective action."); *Frye*, 495 F. App'x at 675 ("Frye argues that the FLSA does not require named plaintiffs, such as himself, to file written consents. But the plain language of § 256(a) does."); *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1016 (11th Cir. 2007) ("[Section] 216(b) plainly states that [a collective] action may not proceed as to any person until a formal written consent from that person is filed in court."); *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) ("The statute is unambiguous: if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint, for you might have been named without your consent."); *In re Food Lion, Inc.*, Nos. 94-2360, 94-2645, 97-1443, 95-1274, 97-144, 1998 WL 322682, at *13 (4th Cir. June 4, 1998) ("Case authority has interpreted the statutory sections as requiring all plaintiffs in a collective action under the FLSA to file written consents for statute of limitations purposes. 'Until a plaintiff, even a named plaintiff, has filed a written consent, []he has not joined the class action, at least for statute of limitations purposes.'" (alteration in original)) (affirming the lower court's dismissal of certain named plaintiffs' untimely claims).

Moreover, numerous district court decisions from outside of the above circuits have come to the same conclusion. *Gessele v. Jack in the Box, Inc.*, 6 F. Supp. 3d 1141, 1158 (D. Or. 2014) ("Named plaintiffs, therefore, are required to file written consents with the court to *commence* an FLSA collective action even if written consents are not necessary for named plaintiffs to *join* a collective action." (emphases in original)); *Ketchum v. City of Vallejo*, 523 F. Supp. 2d 1150, 1156 (E.D. Cal. 2007) (holding that the plaintiffs' FLSA collective action is time-barred unless the plaintiffs can demonstrate that the three-year statutory period applies because no consent by any plaintiff, including the named plaintiffs, had been filed within the two-year statutory period); *Tate v. Showboat Marina Casino P'ship*, No. 02-CV-3432, 2002 WL 31443124, at *6 (N.D. Ill. Oct. 31, 2002) ("[E]ach Plaintiff—including the named Plaintiffs—must file a signed consent in order to mark the commencement of each individual Plaintiff's action for the purposes of the statute of limitations."); *Bonilla*, 61 F. Supp. 2d at 1132–33 (D. Nev. 1999) ("When plaintiffs have filed a 'collective action,' under § 216(b), all plaintiffs, including named plaintiffs, must file a consent to suit with the court in which the action is brought . . . [and] the action is not deemed commenced with respect to each individual plaintiff until his or her consent has been filed." (footnote omitted)); *Songu-Mbriwa v. David Mem'l Goodwill Indus.*, 144 F.R.D. 1, 2 (D.D.C. 1992) ("Until a plaintiff, even a named plaintiff, has filed a written consent, she has not joined in the class action, at least for statute of limitations purposes."). This even includes district court decisions from around the time the written consent requirement was added to the FLSA. *See, e.g.*, *Burrell v. La Follette Coach Lines*, 97 F. Supp. 279, 282–83 (E.D. Tenn. 1951) ("If 'such written consent was not so filed' by a named plaintiff at the time of the filing of the complaint, the action is commenced as to him on the subsequent date on which his written consent is filed . . . ."); *Drabkin v. Gibbs & Hill*, 74 F. Supp. 758, 763 (S.D.N.Y. 1947) ("What has been said of the named plaintiffs and the effect of their failure to file timely a written consent, would apply with equal force to any claim of an unnamed prospective plaintiff . . . .

10

Their claims are likewise barred."). It is also worth noting that the American Bar Association's treatise on the FLSA recognizes that "[a]n FLSA collective action is deemed commenced for limitations purposes only when he or she has filed both a complaint *and* 'a consent to become a party plaintiff.'" 2 AM. BAR ASS'N, THE FAIR LABOR STANDARDS ACT 17-11 to -12 (Ellen C. Kearns, et al. eds., 3d ed. 2015) (quoting 29 U.S.C. § 216(b)).

Although Plaintiff points to two cases to support his argument that a named plaintiff does not need to file a written consent to commence an FLSA collective action, ECF No. 75 at 2 (citing *Crawley v. United States*, 157 Fed. Cl. 178, 180–81 (2021) and *Smith*, 5 F.4th at 703–04), neither case is directly on point. In *Crawley*, Judge Firestone did not need to decide whether a named plaintiff timely filed a written consent. 157 Fed. Cl. at 182. Indeed, the named plaintiff in *Crawley* filed a written consent with her complaint. Complaint at 9, *Crawley*, 157 Fed. Cl. 178 (No. 19-371C), ECF No. 1. Rather, the question before Judge Firestone was whether the opt-in plaintiffs' claims could be equitably tolled. *Crawley*, 157 Fed. Cl. 178. In *Smith*, the Seventh Circuit did not decide the issue of whether a named plaintiff must file both a written consent and complaint to commence an FLSA collective action. 5 F.4th at 702 ("We thus do not have before us the difficult question whether every member of a collective action, including the named plaintiff(s), must file a separate document entitled a Consent . . . ."). In short, Plaintiff clings to dicta from these two cases to claim that a complaint can serve as both a complaint and a written consent, despite the plain meaning of sections 216 and 256 and persuasive authority from numerous federal courts holding otherwise.

Plaintiff further argues that Congress's intent behind section 216 "was to keep unwary plaintiffs from getting dragged into cases and their results, when they had no hand in filing." ECF No. 75 at 5. Thus, Plaintiff argues that "Mr. Lambro has signaled his intent in his complaint to be part of a collection action," and a separate written consent is unnecessary to serve this end. *Id*. While the Court acknowledges that requiring named plaintiffs to file separate written consents may seem redundant in the context of how litigation is usually initiated, Plaintiff's arguments do not persuade the Court to rewrite the text of sections 216 and 256. *See Artuz v. Bennett*, 531 U.S. 4, 10 (2000) ("Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them."); *see also In re Food Lion, Inc.*, 1998 WL 323682, at *13 ("Redundant though it may seem to require consents from the named plaintiffs in a class action, the district court did not abuse its discretion in ordering such consents nor in dismissing the appellants' claims which exceeded the limitations period when no consents were filed within the applicable three year period."). In other words, the Court "will not presume with [Plaintiff] that any result consistent with [his] account of the statute's overarching goal must be the law but will presume more modestly instead 'that [the] legislature says . . . what it means and means . . . what it says.'" *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (third, fourth, and fifth alterations in original) (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005)).

Plaintiff filed his complaint on January 28, 2021,[2] but he did not file his written consent to become a party plaintiff to an FLSA collective action until June 18, 2024. *See* ECF No. 1;

---

[2] He additionally filed a transfer complaint in this Court on June 17, 2021, ECF No. 20, and an amended complaint on November 15, 2021, ECF No. 25, neither of which had attached thereto Plaintiff's written consent to be a party plaintiff to a collective action.

11

ECF No. 58-4 at 2.  Accordingly, the commencement of Plaintiff's collective action is governed by section 256(b).  And because his consent was not filed until June 18, 2024, the action is not "considered to be commenced in the case of [Plaintiff]" until June 18, 2024.  29 U.S.C. § 256.  Therefore, Plaintiff's collective action is time-barred because his claims end in "approximately July 2020," which is outside the FLSA's three-year statute of limitations for willful violations.  ECF No. 40 ¶ 25 ("Plaintiff's purchase order agreement with the [VOA] has been in force from 2002 to approximately July 2020 . . . .").

### 2. Equitable Tolling

Having decided that an FLSA collective action is only commenced upon the filing of both a complaint and a claimant's written consent, the Court next decides whether the FLSA's statute of limitations can be equitably tolled to preserve Plaintiff's otherwise time-barred claims.  To begin, "[t]he question of whether equitable tolling is allowed under the FLSA has not been resolved by the Supreme Court or the Federal Circuit."  *Moreno v. United States*, 82 Fed. Cl. 387, 400 (2008).  The government categorically asserts that "equitable tolling is not available under the FLSA as against the United States."  ECF No. 74 at 17.  The government further argues that even if available, Plaintiff cannot invoke equitable tolling in the instant case because he has not satisfied both prongs of the equitable tolling standard.  *Id*. at 24.  In response, Plaintiff notes that "[e]very Circuit that has decided whether equitable tolling is available for FLSA plaintiffs has ruled that it is, under the right circumstance" and that "if equitable tolling is available as against any defendant, it is available as against the [United States]."  ECF No. 75 at 9.  Moreover, Plaintiff reasons that equitable tolling is warranted because the government misinformed Plaintiff of his rights, or Plaintiff did not know of his rights.  *Id*. at 12–13.  Therefore, Plaintiff asserts that the Court must toll the statute of limitations until Plaintiff knew of his rights under the FLSA, which, according to Plaintiff, occurred after the Federal Circuit's decision in this case.  *Id.* at 12.

Here, the Court need not decide whether equitable tolling is generally available under the FLSA against the United States because it is clear that Plaintiff can neither demonstrate the requisite diligence nor the extraordinary circumstances that would warrant equitable tolling even assuming it was available.  A litigant is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  These two requirements operate as "'elements,' not merely factors of indeterminate or commensurable weight."  *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016).  Generally, the diligence prong "covers those affairs within the litigant's control" while the "extraordinary-circumstances prong . . . is meant to cover matters outside its control."  *Id*. at 257.  Under the diligence prong, courts "have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . ."  *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).  "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'"  *Holland*, 560 U.S. at 653 (first quoting *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996); then quoting *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008)).  Conversely, courts are generally "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."

*Irwin*, 498 U.S. at 96.  Under the extraordinary circumstances prong, the circumstances that caused a litigant's delay must be "both extraordinary *and* beyond its control."  *Menominee*, 577 U.S. at 257 (emphasis in original).  "[A] garden variety claim of excusable neglect," *Irwin*, 498 U.S. at 96, such as a "miscalculation" that leads to a missed filing deadline, *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), or a mistaken legal interpretation, *see Menominee*, 577 U.S. at 257–58, does not satisfy this prong.

First, Plaintiff cannot demonstrate that he was "pursuing his rights diligently."  *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418).  As the government observes, "[t]hat a failure to file a consent would jeopardize [Plaintiff's] ability to prosecute an FLSA collective action was a foreseeable risk."  ECF No. 74 at 21.  Given the plain language of 29 U.S.C. § 256 and the numerous circuit and district court decisions holding that a named plaintiff must file a complaint *and* a written consent to commence an FLSA collective action, Plaintiff was reasonably on notice that failing to do so would bar his collective action claim.  *See, e.g.*, *Stone*, 935 F.3d at 152; *Frye*, 495 F. App'x at 677; *Harkins*, 385 F.3d at 1101; *Acosta*, 800 F.3d at 472.  Plaintiff counters that the cases he cites, namely *Crawley* and *Smith*, "would give any reasonable, would-be-litigant pause as to whether filing a *separate, signed,* consent [is] necessary to start his or her collective action."  ECF No. 75 at 7 (emphasis in original).  However, Plaintiff has not produced any evidence that he (or his counsel for that matter) relied on *Crawley* and *Smith* in determining that his written consent was unnecessary.  Indeed, such evidence could not possibly exist as both *Crawley* and *Smith* were decided in December and July 2021, respectively, *after* Plaintiff had filed his putative collective action on January 28, 2021.  *See* ECF No. 1; *Crawley*, 157 Fed. Cl. 178; *Smith*, 5 F.4th 700.  And recall, in *Crawley*, the named plaintiff filed a written consent with the complaint.  ECF No. 1 at 9, *Crawley*, 157 Fed. Cl. 178 (No. 19-371C).  Moreover, as discussed above, relying on dicta in *Crawley* and *Smith* (even if those opinions had been issued prior to the filing of Plaintiff's complaint) over the numerous circuit and district courts that have ruled that a named plaintiff must file a written consent in a collective action is unreasonable.  Given that filing a written consent is "hardly onerous or burdensome," *Bonilla*, 61 F. Supp. 2d at 1139, Plaintiff's failure to do so does not satisfy the diligence prong of the equitable tolling test.  *See Sneed v. McDonald*, 819 F.3d 1347, 1355 (Fed. Cir. 2016) (holding that a party seeking equitable tolling must show "reasonable diligence").

Even if Plaintiff had demonstrated reasonable diligence to satisfy the first prong of the equitable tolling test, Plaintiff cannot show that he satisfies the extraordinary circumstances prong.  Under the extraordinary circumstances prong, a litigant must demonstrate circumstances that are "both extraordinary *and* beyond its control."  *Menominee*, 577 U.S. at 257 (emphasis in original).  Here, Plaintiff's ability to file a written consent was entirely within his control.  Plaintiff could have filed a written consent at any time from the filing of his complaint to when he filed his notice of appeal.  And, as the government notes, "[Plaintiff] controlled the timing of his notice of appeal.  He had sixty days from the entry of judgment to file a notice of appeal[,] . . . [y]et he chose to file the notice of appeal the day after this Court entered judgment, and without filing a written consent before doing so."  ECF No. 74 at 20.  Far from constituting an "extraordinary circumstance," Plaintiff's failure to file a timely written consent more closely resembles "what is at best a garden variety claim of excusable neglect."  *Irwin*, 498 U.S. at 96.  Plaintiff did not simply file a "defective pleading," ECF No. 75 at 2 (citing *Moreno*, 88 Fed. Cl. at 281); rather, Plaintiff failed to file a timely written consent altogether.

Plaintiff's argument that the statute of limitations should be tolled until he learned of his rights as a federal employee via the Federal Circuit's decision in this case is similarly unavailing. With regard to tolling, the issue is not that Plaintiff did not "know of [his] right[s]" under the FLSA. ECF No. 75 at 12. Rather, the issue is whether Plaintiff followed the requirements to commence a collective action under the FLSA. His uncertainty about whether his case would be successful based on prior rulings in the Court of Claims, the Federal Circuit, and by judges of this Court has nothing to do with how a reasonable person would read the requirements of section 256. Plaintiff was obligated to follow the requirements of that section to commence a collective action despite any uncertainty he might have about whether his claim under the FLSA would ultimately be successful. Indeed, the Federal Circuit's opinion in this case does not quote, cite, or otherwise reference section 256. *See generally Lambro*, 90 F.4th 1375.

Accordingly, for the reasons discussed above, the Court must dismiss Plaintiff's collective action claims because they fall outside the FLSA's statute of limitations and because Plaintiff fails to demonstrate that his collective action claims are entitled to equitable tolling.

### 3. Disposition of Plaintiff's Remaining Claims

Having dismissed Plaintiff's untimely collective action claims, the Court turns next to the disposition of Plaintiff's remaining claims. As the government notes, "[t]here must be a named Plaintiff for a case to proceed as a collective action." ECF No. 74 at 25; *see Gomez*, 799 F.3d at 1194 (dismissing a collective action "because no named plaintiff filed the required consent to proceed as a party in the collective action"). And Plaintiff concedes as much. *See* ECF No. 73 at 40:15–17. Accordingly, the Court must decide what effect, if any, that Plaintiff's putative amended complaint and his alleged individual claims have on the disposition of the remainder of this case.

#### a. Amended Complaint

Plaintiff has moved to amend his complaint to add one named plaintiff, Charles Nixon. ECF No. 68-1 ¶ 42. According to Plaintiff, Mr. Nixon was unlawfully terminated from his work with VOA for pursuing his rights under the FLSA. *Id.* ¶¶ 42, 132. As the government notes, however, Mr. Nixon's theory of harm is neither from the same time period nor of the same nature as Plaintiff's alleged injuries. ECF No. 74 at 27. *Compare* ECF No. 68-1 ¶¶ 42, 132–35, *with id.* ¶¶ 41, 48–77. While Plaintiff's claims stem from his alleged misclassification during his work for VOA under a series of purchase orders from approximately 2002 to 2020, *id.* ¶ 50, Mr. Nixon alleges a retaliation claim, and worked for VOA from 2022 to 2024, *id.* ¶ 42. Therefore, Mr. Nixon's claims cannot properly be joined to Plaintiff's claims. *See Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336 (2004) (discussing the requirements for joinder).

Moreover, Mr. Nixon's retaliation claim sounds in tort, and this Court cannot exercise jurisdiction over tort claims. 28 U.S.C. § 1491(a)(1) (stating that U.S. Court of Federal Claims has jurisdiction to "render judgement upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort*" (emphasis added)); *see* ECF No. 68-1 ¶ 132 (stating that

14

USAGM "retaliated against Plaintiff Nixon for engaging in the protected act of pursuing his rights under the FLSA").  Although Plaintiff contends that it would be anomalous to require an FLSA retaliation claim to be separately brought from other money-mandating claims under the FLSA, ECF No. 75 at 14–15, the Court's jurisdictional statute does not confer jurisdiction over claims that sound in tort.  The Federal Circuit squarely addressed this issue in *Jentoft v. United States*, holding that FLSA retaliation claims sound in tort and that this Court lacks the jurisdiction to consider such claims.  450 F.3d 1342, 1350 (Fed. Cir. 2006) ("We affirm the Claims Court's decision dismissing Jentoft's claim of retaliation under the FLSA for lack of subject matter jurisdiction.").  Plaintiff does not attempt to distinguish *Jentoft* from the instant case.  Rather, Plaintiff critiques the implications of the *Jentoft* decision.  *See, e.g.*, ECF No. 75 at 16 ("Another difficulty with the government's position and the *Jentoff* [sic] ruling is that it ignores Congress's intent in amending the FLSA 'to provide federal employees with as much, but no more, protection than their counterparts in the civilian economy enjoyed.'" (quoting *Palardy v. Horner*, 711 F. Supp. 667, 672–73 (D. Mass. 1989))).  As the government observes, to the extent that Plaintiff asserts that *Jentoft* was wrongly decided, the proper forum for this argument is not this Court.  ECF No. 76 at 14.

Accordingly, Plaintiff's motion for leave to file a third amended complaint, ECF No. 68, is denied because it would be futile to allow the amendment.  *See Campbell v. United States*, 932 F.3d 1331, 1341–42 (Fed. Cir. 2019) (affirming dismissal of the plaintiffs' untimely claim and denial of the plaintiffs' request to amend their complaint because the amended complaint would still be untimely and outside the court's jurisdiction).  The Court lacks the jurisdiction to decide Mr. Nixon's retaliation claim, and, even if it had jurisdiction over the claim, Mr. Nixon's claim does not appear closely related enough to Plaintiff's claims to make joinder appropriate.

### b. Plaintiff's Individual Claims

The Federal Circuit ordered the Court to consider Plaintiff's timely claims.  *Lambro*, 90 F.4th at 1384 ("[W]e vacate the Claims Court's dismissal of Mr. Lambro's timely claims.  We remand the case for further proceedings consistent with this opinion.").  Having dismissed Plaintiff's collective action as untimely and denied Plaintiff's motion to amend his complaint as futile, only the disposition of Plaintiff's individual claims remains.  In its motion for judgment on the pleadings or for summary judgment, the government urges the Court to enter judgment in favor of the United States and dismiss this case altogether.  ECF No. 74 at 25.  The government asserts that Plaintiff solely asserted a collective action, and Plaintiff's case must be dismissed in its entirety since no outstanding claims remain for judgment.  *Id*. ("There must be a named plaintiff for a case to proceed as a collective action[,] . . . [and] if the Court concludes that Mr. Lambro does not have any viable claims, he cannot be allowed to represent opt-in plaintiffs . . . . Accordingly, the Court should enter judgement if it agrees that Mr. Lambro's claims are time barred.").  The government states that "Mr. Lambro has indicated that he is seeking to proceed only via a collective action," *id*. at 25 n.6, because there is "no indication in his complaint that he intended to proceed through an individual FLSA action that is distinct from his putative collective action," ECF No. 76 at 10.  The government argues that "the first sentence of the operative complaint as well as the proposed amended complaint characterizes this case only as a 'class action'" and that the portions of the complaint that state that "Mr. Lambro is proceeding 'individually and on behalf of similarly situated individuals'" emphasize that he is proceeding

15

via an FLSA collective action. *Id.* at 10 (quoting ECF No. 40; ECF No. 68-1). The government further asserts that "the consent Mr. Lambro filed does not extend to an individual FLSA claim." *Id*. at 12.

Plaintiff responds by noting that his "current operative complaint breaks out separate allegations related to the class of similarly situated putative employees." ECF No. 75 at 13. Plaintiff asserts that the operative complaint "unambiguously makes out his individual claims for misclassification and unpaid overtime." *Id*. Plaintiff points to portions of the complaint that address his specific allegations that he worked for VOA under a series of unlawful purchase order agreements, was denied benefits enjoyed by federal employees, and created a limited liability company to contract with the government. *Id*. (citing ECF No. 40 at 5–13); *see also* ECF No. 68-1 ¶¶ 67, 69. Therefore, Plaintiff asserts that his "individual claims survive, even if [the Court] finds that his ability to represent the collective is statutorily barred." ECF No. 75 at 13.

Courts are somewhat divided over whether the FLSA authorizes "dual capacity" suits in certain circumstances. *Compare Smith*, 5 F.4th at 704 ("The question is whether section 216(b) authorizes 'dual capacity' suits, in which a plaintiff sues simultaneously as a group representative and as an individual. The answer is yes, for a number of reasons."), *with Gomez*, 799 F.3d at 1194 (dismissing the plaintiffs' individual claims because the court found that the plaintiffs intended to solely proceed as a collective even though they brought claims "on behalf of themselves *and other similarly situated individuals*"). In a "'dual capacity' suit, . . . a plaintiff sues simultaneously as a group representative and as an individual." *Smith*, 5 F.4th at 704. Thus, in such cases, a court may convert a collective action into an individual action. *See Morrison v. Columbus Fam. Health Care*, 672 F. Supp. 3d 524, 530 (S.D. Ohio 2023) (observing that if a court concludes that plaintiffs in a putative collective are not similarly situated, "the court de-certifies the class, dismisses the opt-in plaintiffs without prejudice, and proceeds to trial on the named plaintiff[(s)]' individual claims" (alteration in original) (quoting *Sisson v. OhioHealth Corp.*, No. 13-CV-0517, 2013 WL 6049028, at *2 (S.D. Ohio Nov. 14, 2013))).

The Court finds the *Smith* court's analysis instructive on how to treat a dual capacity suit under the FLSA. In *Smith*, the plaintiff "contest[ed] only the district court's refusal to allow her individual action to move ahead" in an FLSA case that was filed as a putative collective action. 5 F.4th at 702. The Seventh Circuit reasoned that 29 U.S.C. § 216(b) authorizes plaintiffs to proceed in a dual capacity because "[t]he Federal Rules of Civil Procedure permit a party to 'join, as independent or alternative claims, as many claims at it has against an opposing party.'" *Id*. at 704 (quoting Fed. R. Civ. P. 18(a)). The circuit then "conduct[ed] a *de novo* review to determine whether [the plaintiff] ha[d] included enough facts to put [the defendant] on notice of her individual claims." *Id*. After this analysis, the circuit, reading the complaint in the light most favorable to the plaintiff, concluded that the plaintiff had sufficiently pled an individual claim under the FLSA. *Id*. at 705–06.

Here, the Court is deciding the government's motion for judgment on the pleadings or alternatively for summary judgment. As observed above, in deciding a motion for judgment on the pleadings, the Court "must assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant . . . ." *Owen*, 851 F.2d at 1407. Thus, in

determining whether Plaintiff has sufficiently pled an individual claim, the Court reads the complaint in the light most favorable to Plaintiff. To begin with, the caption of the operative complaint reads "Jason Lambro ("Plaintiff"), *individually* and on behalf of similarly situated individuals . . . ." ECF No. 40 at 1 (emphasis added). Furthermore, the "Factual Allegations" section of the complaint is separated into subsections describing Plaintiff's individual allegations and allegations of the putative collective. *Id*. ¶¶ 23–58. Although portions of the operative complaint that describe Plaintiff's individual claims do contain references to the collective, *see, e.g., id*. ¶¶ 34, 40, 43, these sections still unmistakably outline facts specific to Plaintiff's individual circumstances, *see, e.g.*, ECF No. 40 ¶¶ 24–29 (describing the duration of Plaintiff's work with VOA, the terms of his contract, and the degree of control VOA exercised over his work). Furthermore, a copy of Plaintiff's purchase order agreement with VOA was attached to the complaint as an exhibit. ECF No. 40-2 at 1–5. And while the government notes that Plaintiff's written consent, ECF No. 58-4 at 2, which was attached to the putative amended complaint, only references the collective, this consent—read in the light most favorable to Plaintiff—merely serves as a consent to be bound in a collective action if the putative collective is certified, and it does not waive his right to proceed individually. Consequently, the Court finds that Plaintiff has asserted individual claims under the FLSA because his individual claims are described in sufficient detail. Accordingly, even though the collective action that Plaintiff attempted to bring must be dismissed as time-barred, Plaintiff may proceed on his individual claims.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the government's motion. Plaintiff is instructed to **FILE** an amended complaint within **thirty days** of the issuance of this opinion that omits all allegations related to the putative collective and focuses solely on the allegations that relate to Plaintiff's individual claims that were raised in the amended complaint (ECF No. 40).

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge
